

**ORDERED in the Southern District of Florida on June 09, 2008.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                        CASE NO. 07-12776-BKC-LMI

JORGE GONZALEZ,                               Chapter 7

        Debtor.
_____/

DONALD F. WALTON, Acting United             Adv. Case No. 07-01710-BKC-LMI-A
States Trustee,

        Plaintiff,

v.

JORGE GONZALEZ,

        Defendant.
_____/

<u>**MEMORANDUM OPINION**</u>

       This matter came before the Court upon the Amended Complaint of the United States

Trustee (CP #6) objecting to entry of an order of discharge for the Debtor Jorge Gonzalez. A trial

was held in this matter on April 22, 2008. For the reasons stated below, the Court finds it appropriate to deny the Debtor's discharge pursuant to 11 U.S.C. §§727(a)(2)(A) and (a)(4).

## FACTUAL HISTORY[1]

Jorge Gonzalez (the "Debtor") filed a voluntary petition for chapter 7 protection on April 19, 2007. The Debtor's schedules show his unsecured debts total $263,547.30, while his monthly income is $4,233.33, of which $1,733.33 is from employment and $2,500 is support given by his parents and mother-in-law. [Schedule F & I, Bankr. CP #1]. Prior to filing for bankruptcy, the Debtor earned a masters degree in physical therapy and made three unsuccessful attempts at passing the physical therapy licensing exam - in December 2005, April 2006, and December 2006. In May 2007, shortly after filing, the Debtor passed the licensing exam, whereupon he found a position in his field earning approximately $59,000 per year. The Debtor's non-debtor wife is a student; she was not employed during the relevant time period.

## SUMMARY OF DISPUTE

The United States Trustee ("UST") filed the instant adversary objecting to the Debtor's discharge pursuant to 11 U.S.C. §§727(a)(2)(A), (a)(3), and (a)(4).[2] The UST objects to discharge under section 727(a)(2)(A) alleging the Debtor concealed his interest in real property and that he transferred assets into that property with the intent to delay, defraud, or hinder creditors. The real property at issue is a house purchased by the Debtor's non-debtor wife, which house the Debtor did not list on his schedules. The UST alleges that the Debtor also transferred assets to his relatives, which transfers where not listed in the Statement of Financial Affairs ("SOFA"), with the intent to delay, defraud, or hinder creditors pursuant to section 727(a)(2)(A). The UST also contends that the Debtor's discharge should be denied under section 727(a)(3) for

---

[1] The Parties stipulated to most relevant facts in the Pretrial Order (CP #41).
[2] The Amended Complaint states the UST was objecting to discharge on the basis of 11 U.S.C. §727(c)(1) but there is no count in the Amended Complaint seeking this relief.

failing to keep or preserve records of his financial condition. Finally, the UST argues that the

Debtor's discharge should be denied pursuant to section 727(a)(4) because the Debtor has made

a false oath. The Debtor counters that he is entitled to his bankruptcy discharge, and that all the

improprieties of which he is being accused are the result of bad lawyering by his initial

bankruptcy counsel. The Debtor argues that as a court of equity, I should exercise my discretion

and provide him with the fresh start to which he contends he is entitled.

### SECTION 727(a)(2)(A) – CONCEALMENT/TRANSFER OF ASSETS

Section 727 provides:

(a) The court shall not grant the debtor a discharge unless –
> …
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed –
>> (A) property of the debtor, within one year before the date of the filing of the petition

In order to prevail on a claim under this section, the plaintiff must prove

> (1) that a transfer occurred; (2) that the property transferred was property of the estate; (3) that the transfer occurred within one year of the Petition; and (4) that at the time of the transfer the debtor possessed a requisite intent to hinder, delay, or defraud a creditor.

*Marine Midland Bank, N.A., v. Mollon*, 160 B.R. 860, 864 (M.D. Fla. 1993) (*citing In re*

*Ingersoll*, 106 B.R. 287 (Bankr. M.D. Fla. 1989)). "Intent must be actual intent, not constructive,

but may be ascertained from the totality of the circumstances." *Butler v. Fieser (In re Fieser),*

248 B.R. 648, 651 (Bankr. M.D. Fla. 1999). Intent to hinder, delay, or defraud a creditor may be

based on circumstantial evidence or may be imputed where the debtor fails to make a full

disclosure of her liabilities in the petition and omits assets of substantial value from the

schedules. *Marine Midland Bank, N.A., v. Mollon*, 160 B.R. at 864. *See also In re Kaiser*, 94 B.R. 779, 780 (Bankr. S.D. Fla. 1988); *In re Sofro*, 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990).

### The Real Property

The UST contends that the Debtor intentionally concealed his equitable interest in a home titled in his non-debtor wife's name (the "Home"). In support of this allegation, the UST offered the testimony of the Debtor and a transcript of the Debtor's section 341 testimony. The Debtor testified at trial that he lives in the Home and believes it to be his home as much as his wife's, despite the fact that he is not listed on the title.[3] The Debtor also testified that while most of the mortgage payments were made in full by his parents, there were occasions when he contributed money toward the payments. The Debtor admits that he did not list the Home on his schedules, but states he did disclose the Home to the attorney filing his schedules.

While the evidence clearly demonstrates that the Debtor has at least an equitable interest in the Home, the UST has not shown that the Debtor deliberately concealed his interest in the Home, or that such concealment was intentionally done to hinder, delay or defraud creditors. Assuming the Debtor reviewed his bankruptcy schedules prior to their being filed,[4] even if the Debtor noticed the Home was not listed on his schedules, it is reasonable to assume he may not have recognized it was an error that the Home was not listed. Having earned a masters degree, the Debtor is obviously educated, but understanding that an equitable interest may mean something other than legal title is a legal conclusion I do not believe the Debtor necessarily had sufficient independent knowledge to make.

I make a similar finding regarding the UST's contention that the Debtor fraudulently converted non-exempt assets by occasionally contributing some of his wages toward mortgage

---

[3] The Debtor testified at his 341 meeting that he is listed on the mortgage, which, under Florida law, is required.
[4] As more fully discussed below, Debtor gave conflicting testimony as to this fact.

payments and by purchasing items with his credit cards to make improvements to the Home. To the extent that there was a transfer of the Debtor's assets into the Home, I do not find that the Debtor did so with the intent to delay, defraud, or hinder creditors. The Debtor lived at the Home; the evidence does not show that his efforts to maintain or enhance his Home were made with the intent to defraud creditors. Therefore, I do not find that the Debtor's actions regarding the Home are sufficient to warrant a denial of discharge pursuant to section 727(a)(2)(A).

### The Gifts

The UST also argues that the Debtor's pre-petition gifts to various family members constitute fraudulent transfers of assets. Item seven on the SOFA states: "List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member … " Debtor did not list any gifts, but rather checked the box for "none." [Debtor's Initial Petition, UST Ex. 1].

However, upon questioning by the UST, the Debtor disclosed various significant gifts including:

- two televisions bought in September 2006 for his parents and mother-in-law; the purchase of both TVs and related accessories exceeded $4,000;

- watches for his parents;

- a necklace for his mother in October 2006 for $328.02 [UST Ex. 4, statement closing date Nov. 26, 2006];

- a chain for his mother-in-law for $400;

- jewelry for his brother in October 2006 for at least $900.[5] [UST Ex. 3].

In addition to the above purchases, in October 2006, the Debtor spent $5,400 at Wholesale Jewelers but he does not remember what he bought. There was also evidence Debtor purchased patio furniture for his parents for $1,700; however, this purchase was made in January 2006, outside of the one-year pre-petition window, and therefore did not need to be disclosed.

Of the purchases that the Debtor has admitted were gifts to family members, most were made in late 2006, the same time period that the Debtor testified he began to experience financial problems. Despite the Debtor's awareness of his financial situation, the Debtor testified that he purchased these gifts on credit with the belief he would be able to pay for them after he passed his licensing exam. Indeed, a couple of the creditors offered deferred payments for the purchases, but this alone does not explain how the Debtor thought he could afford even the minimum payment for his credit cards, as the Debtor's schedules show unsecured debts of $263,547.30 [Schedule F, UST Ex. 1], and the Debtor testified that once employed he expected to make between $50,000 to $70,000 a year. Debtor's gross yearly income prior to filing was

(A)    2006 - $20,000

(B)    2005 - $15,067

(C)    2004 - $27,001

The Debtor argues that these purchases were the product of his financial imprudence, and, had he known the consequences of the purchases at the outset of the bankruptcy, he would have paid back at least a portion of the debt. In fact, the Debtor did unsuccessfully attempt to redeem the televisions for a fraction of what they were purchased for only months prior.

---

[5] The statement this purchase relates to shows three charges from "dutyfree.com," all made on the same day, for $900, $965, and $2,000 – a total of $3,895. The Debtor testified that he purchased a gift for his brother and a watch for himself but was uncertain which charge related to which purchase, or what the third charge related to. Moreover, although Debtor admittedly bought the watch for almost $1,000, which watch he was wearing at the trial, he scheduled all his jewelry as having a value of $130.

[Bankruptcy CP #31 and 37]. Whatever his intent – whether as the UST argues, the Debtor deliberately engaged in a pre-petition spending spree in which he intentionally ran-up his credit card debt in anticipation of filing bankruptcy and having those debts discharged, which is certainly a logical argument based on the evidence, or whether, as the Debtor argues, the Debtor is merely incredibly irresponsible financially – there is no question that the Debtor failed to disclose these gifts as required.

Because a debtor is not expected to "confess" to improper intent, I must look at the overall circumstances to determine whether it appears the Debtor's purchase of gifts was done with the intent to hinder, delay or defraud creditors**.** *See In re Fieser*, 248 B.R. at 651. Since, based on the evidence, I find the Debtor to be untruthful and his overall attitude regarding money and finances to be deceitful, I find the Debtor to have acted with intent to deceive, hinder and defraud creditors. The Debtor is a smart, educated young man; he holds a graduate degree and is currently a licensed physical therapist – he is not by any measure unsophisticated or uneducated. The Debtor has presented no evidence or excuse as to why he failed to list these gifts. When questioned by me, the Debtor confirmed he understands what signing under penalty of perjury means. Although the Debtor initially testified he never saw the completed Schedules or SOFA, his lawyer acknowledged during trial that, in fact, his client had initialed every page of the Schedules and SOFA; thus, the Debtor was not truthful about this fact. The Debtor then testified he may have been provided each page but he was rushed through the process and never had a chance to read anything. The Debtor called his mother as a witness; she testified that, aside from a slight speech impediment, the Debtor has no cognitive problems and never had any problems with his studies. It is inconceivable that an educated debtor such as Mr. Gonzalez did not read a document he knew he was signing under penalty of perjury. Moreover, there is no reason to

believe why the Debtor, having reviewed the SOFA even cursorily, and based on the amount and timing of these gifts, would not have realized that his response to question seven was improper. Unlike the omitted interest in the Home on schedule A, question seven of the SOFA is straightforward.[6]

Finally, at his 341 meeting Debtor was asked whether there were any errors or omissions in his petition, schedules, and statement of financial affairs, to which question the Debtor answered "no." [UST Ex. 12, Page 4, Line 15-17]. As noted by one court faced with a debtor under remarkably similar circumstances -

> [H]e had apparently decided things might go better for him if he now said he had in essence been duped into signing schedules and statements that had been completed by his wife, which he claimed he had not bothered to ever read. Although the Court frankly did not believe this testimony, there is no question that if Debtor's testimony at trial on this matter is correct, and he did not complete the forms himself (or even review them before signing), that he was also well aware of this information at the time of his § 341 first meeting. He nevertheless chose to testify, under oath at that proceeding, that he had read and signed the information, and that no information contained therein was incorrect.

*Turner v. Keck (In re Keck),* 363 B.R. 193, 204 (Bankr. D. Kan. 2007).

While most of the Debtor's testimony at trial was uncredible, his testimony and general attitude regarding the gifts was particularly evasive. For example, when the UST attempted to discern the extent of the Debtor's gifts through discovery, the Debtor provided two written statements, one of which was signed by the Debtor, which the Debtor admitted at trial did not provide complete disclosures of the gifts. In fact, in his testimony at trial the Debtor disclosed a gift that he had never previously told the UST about - the $328 necklace for his mother. When asked why he had not disclosed this gift before, the Debtor stated it was because he had not been

---

[6] The Debtor also testified that a scheduled debt of $5,471 to Gem B Jewelry Express was his father's debt but I do not find the Debtor's testimony credible as to this either. When Debtor reviewed and signed the schedules, he did not remove this creditor. Moreover, while this particular bill was sent to the Debtor's father's address, until he got married, Debtor lived with his parents. Thus, it is fair to assume this jewelry was also purchased by Debtor. However there was no testimony regarding the date of purchase.

asked about that particular purchase before. While not a basis for denying Debtor's discharge (although the UST argued to the contrary), Debtor's tendency to untruth in financial matters is illustrated by the circumstances surrounding the mortgage on the Home. Debtor testified he could not get a loan to purchase the Home, so his wife applied. The mortgage broker told the Debtor and his wife that she needed to list employment to get the mortgage. With Debtor's knowledge, the wife signed a mortgage application that falsely stated she was employed at the Debtor's parent's business. The Debtor's mother testified that her daughter-in-law has never worked for her and that nobody called her business to verify such employment.

The Debtor also claimed not to recall what significant credit card purchases he made. While nobody is expected to remember every little item charged, it strains belief that the Debtor could not recall what, besides his and his brother's watch, he purchased from dutyfree.com in October 2006 for $3,800 or that he cannot remember what he purchased from Wholesale Jewelers in October 2006 for $5,400. Moreover, the Debtor was opening new credit cards, and racking up significant credit card advances, even while he was not making all required minimum payments on credit cards he already had.

Thus, I can only presume that the Debtor's omission of the gifts was deliberate, and that Debtor omitted these items because he intended to hinder, delay and defraud his creditors. Therefore, the Debtor's discharge is denied under section 727(a)(2)(A).

### SECTION 727(a)(3) – FAILURE TO KEEP OR PRODUCE RECORDS

Under section 727(a)(3), a debtor will be denied a discharge for failing to keep, destroying, concealing, or falsifying books and records from which his financial condition may be determined unless such action or failure to act was justified under the circumstances. 11 U.S.C. §727(a)(3). *See also Keefe v. Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 888 (11th

Cir. 2007). The UST contends that the Debtor should be denied his discharge under this section for failing to keep or produce records relating to the use of his credit cards for home improvement expenses and retail purchases.

The initial burden rests with the UST to show that the Debtor has not kept records or has not produced the records. The UST has not shown what records, if any, the Debtor has failed to keep or produce. The Debtor testified that most of his financial documents, including bank and credit card statements, had been turned over to the Debtor's former counsel and, therefore, were no longer in his possession. The UST apparently received those documents as he introduced them as evidence. That the Debtor cannot produce actual receipts for the items purchased or any documentation beyond the credit card statements is not indicative that the Debtor failed to keep proper records or otherwise concealed or destroyed the records. Therefore, I find this claim without merit.

### SECTION 727(a)(4) – FALSE OATH

Pursuant to section 727(a)(4), a discharge will not be granted when a debtor knowingly and fraudulently made a false oath in connection with his or her bankruptcy case.

> "To justify denial of a discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991). "Deliberate omissions by the debtor may also result in the denial of a discharge." *Chalik*, 748 F.2d at 618. False oaths regarding worthless assets can still bar discharge of debts. *Id*. Discharge may not be denied where the untruth was the result of mistake or inadvertence. *In re Cutignola*, 87 B.R. 702, 706 (Bankr. M.D. Fla. 1988). "Rather, the false oath must be made intentionally with regard to a matter material to the case." *Id*.

*Keefe v. Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 889 (11th Cir. Feb. 23, 2007).

When a debtor puts false or incomplete information on his or her schedules, this constitutes a false oath.

> It is clear that a debtor's signature on a bankruptcy petition, schedule of assets and liabilities and the SOFA, under penalty of perjury, are written declarations that have the force and effect of oaths. Thus, a false statement or omission within a debtor's schedules may qualify as a false oath under § 727(a)(4)(A).

*In re Keck*, 363 B.R. at 201.

The UST contends the Debtor made a false oath in failing to schedule his equitable interest in the Home, his wife's laptop, his anticipated increased income, and the gifts given to his parents and mother-in-law. I have already found that the Debtor's failure to schedule the Home was not fraudulent and will not revisit the discussion here.

As to his wife's laptop, the Debtor admittedly did not include the computer in the schedules. The Debtor testified that the laptop was purchased by the Debtor's mother-in-law for his wife, who had exclusive use of the computer. The UST did not provide any evidence demonstrating that the Debtor has any interest in the laptop. Since the Debtor is not obligated to list assets in which he has no interest, I do not find the omission to be fraudulent.

Debtor's SOFA estimated his 2007 income as of the petition date at $6,933.32. The Debtor did not schedule any anticipated increase in income. At the time the Debtor filed his petition, he had not yet passed his licensing exam, nor had he secured employment in his field. Although the Debtor believed he would pass the exam on his most recent fourth attempt, he also approached the prior three exams with the same belief. I do not find the omission to be fraudulent as the anticipated increase in income was contingent on the Debtor passing the license exam and subsequently finding employment, neither of which event had occurred at the time of the bankruptcy filing.

Finally, as discussed above, the Debtor failed to list gifts he had given to his family. I have already found that the Debtor fraudulently transferred these assets to his relatives. For the

reasons stated above, I also find that the Debtor's failure to schedule the gifts was both deliberate and material. Therefore, denial of his discharge is also appropriate under section 727(a)(4).

## CONCLUSION

The Debtor engaged in a pattern of reckless spending which would have guaranteed any of the credit card companies success in any objection to dischargeability of the Debtor's obligations to them pursuant to 11 U.S.C. §523(a)(2). However, although the credit card companies chose not to pursue this litigation, the UST had the authority, and, in circumstances as egregious as these, perhaps the obligation, to bring this action. *See In re Fieser*, 248 B.R. 648; 11 U.S.C. §727(c)(1). While the Debtor blames his follies on bad legal advice, and though I do not doubt there are instances in which Debtor could have been better advised by predecessor counsel, those acts or omissions for which Debtor has forfeited his discharge are his alone. Accordingly, for the reasons stated herein, I find that the Debtor's discharge should be denied pursuant to 11 U.S.C. §§727(a)(2) and (a)(4). The U.S. Trustee is directed to submit a final judgment consistent with this opinion.

###

Copies furnished to:
Ariel Rodriguez, Esq.
Robert Angueira, Esq.

*Attorney Rodriguez shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*